May it please the Court, David Russell appearing for Appellant Deborah Doerfler-Casner. And I'd like to reserve five minutes for rebuttal. Sure. I'd like to deviate from the order of the issues represented in the briefs and first focus on the one error asserted that's unrelated to gender harassment, and that is the District Court's holding at summary judgment that California Labor Code Section 3602B1 does not apply to the appellant's assault and battery claims involving Supervisor Kirkman. Now, as the briefing demonstrates, it is a settled matter of California law that 3602B1 should apply. Now, California Labor Code Section 3602B1, it's a statutory exception to workers' compensation exclusivity provisions, and it allows employees to avoid workers' compensation exclusivity and sue an employer for injury when the employee's injury is proximately caused by a willful physical assault by the employer. Now, under California law, the employer, for the purpose of the statute, includes agents of the employer. And under California law, supervisors are an employer's agents. And this can be seen in the California Supreme Court's decision in Firmino. There, a sales clerk was suspected of stealing some of the store's merchandise and was held against her will by the store's personnel manager, loss prevention manager, and two security agents. She sued the employer for false imprisonment. And the Court applied Section 3602B1 and found that workers' compensation exclusivity did not apply. That the ---- In that case, wasn't there evidence that they were ---- that this was done pursuant to company policy? It was, you know, clearly where there's ratification, there's liability. But here, you not only had all of these people, but they were ---- the interrogation was being conducted pursuant to company, express company, authorized policy. Your Honor ---- I'm talking about the Firmino case that you're ---- Sure. I believe there was a policy that the personnel managers could hold employees, but obviously in this case they went beyond that policy and they committed a tort here, at least as it was alleged. And I mean ---- Did the Court in that case say in so many words that there could be liability for the employer simply because there was a supervisor involved? Did they say that in hoc verba? Did they say that? It wasn't explicitly put in there, but I think implicitly the Court relied on a theory of supervisory liability or agency. And I think that can also be seen from the Court's reliance on the Meyer decision. And that was a case that came ---- the California court of appeals decided before the codification of 3602B1. Is there any evidence of ratification? No, Your Honor, there is not. In fact, it's Kirkman, isn't it? Yes. The allegedly responsible individual, wasn't he disciplined? He was. So how does that fit in with the case law Judge Corman was asking you about? Well, if there's just a ---- if it's a ratification theory, I don't think that would fit here. But I think there's a supervisory liability theory or an agency liability. Your theory is there's supervisory liability even where the act was not only not approved, but disputed and punished. Yes, Your Honor. I mean, as under California law, and I mean, you can see this from the Meyer case, that the Firmino court said the outcome of Meyer was unassailable. There the court held that an employer in the same type of situation could be liable and workers' compensation didn't apply for an assault on an employee committed by the employer's agent and expressly relied on an agency theory without even coming up to discussing a ratification theory at all. And it's clear from the district court relied exclusively on the Fretland case, and the Fretland case said that a respondeat superior does not apply to 3602B1, but it expressly did not deal with supervisory liability. It said that the appellant had waived that issue. And I think it's clear also if you just look through the workers' compensation statutes, when they refer to an employer, it seems to also ‑‑ it seems like it's not just referring to the sole proprietorship type of enterprise. There's a larger scope to employer there. Can I ask you a question about whether we should deal with this issue at all? Right now, if the judgment on the federal claims is affirmed, this becomes totally a state law claim. And if it were in the district court in this posture, the district court would have discretion to simply dismiss these claims without prejudice through their being filed in the California courts. Why should we, now that this case is totally a state law claim, assuming we affirm on the federal claims, why shouldn't we just vacate this and dismiss without prejudice through filing it in the state courts of California? Well, Your Honor, I think the district court would have the discretion to hear these claims, and I think ‑‑ I think that's built into the question. Yes. I have no question about that. It's certainly discretion. I'm not talking about a lack of subject matter jurisdiction. Well, I think it's a clear enough case of California law that the court wouldn't be going out too much on a limb to decide this. And, I mean, it would give ‑‑ it would allow the district court, if it wanted to, since it's already familiar with the issues, to determine the rest of the case. If I might continue to get to the Title VII issue, the jury instructions and the special verdict forms used to instruct on Ms. Dorfler-Castor's hostile work environment claim were plainly erroneous. The jury instructions and the special verdicts asked the jury to consider whether she was subjected to harassment of a sexual nature. And this instruction was based on language from old Ninth Circuit cases, which did not recognize that gender-related harassment need not be sexual or motivated by a sexual desire to be actionable. And this Court and the Supreme Court has clarified this. Apparently, the jury was a little confused by that also, weren't they? Yes, they were. And they sent a note back? They sent a note to the court asking if they were able to consider non-sexual harassment. And they were specifically responding to the second. And Judge Shub? Is that who presided? Yes. What did Judge Shub say in response to the jury inquiry? He equated conduct of a sexual nature and gender-related harassment. And he said he clarified that conduct of a sexual nature means conduct that is gender-related. What was wrong with that? I think there are a couple things wrong with that. I think he was right that what the jury needed to look for was gender-related harassment. But I think right here he equated conduct of a sexual nature to conduct that's gender-related. He said the two are the same. And it's clear that they're not the same. While they might be related. He correctly answered the question. I mean, the jury would have understood that it had to be gender-related, wouldn't they, from the answer to the question? Well, I don't know. Because he equated the two. He said conduct of a sexual nature is conduct that is gender-related. Well, that's defining the term. I don't understand. He's defining the term for them. He says this is what it means. But I think it's confusing because it obviously does not mean conduct is gender-related. I mean, I think if the instruction was just you need to look at conduct that's gender-related. Let's suppose his original instruction had used the words conduct of a sexual nature, and he had said right after that exactly what he said in response to the jury's note. Would there still be a problem? I think there would still be a problem. I think there would be lessons. So if he had said conduct of a sexual nature, and by the way, ladies and gentlemen of the jury, that includes conduct that is gender-related. You would still claim that the instruction was infirm? Well, if it – yes, because I think conduct of a sexual nature is a smaller subset of conduct that is gender-related. If he said conduct – you consider conduct that is gender-related including conduct of a sexual nature, I don't think that would be problematic. But that brings me to another problem with the clarification, which was he clarified one of the jury instructions. There was another one before, jury instruction one and special verdict number two, that remained un-clarified. And while he was giving the clarification, the judge asked the jury to refer to jury instruction 10, which had the same sexual nature language. And I think this left the jury confused and without a clear instruction of what the law there was. Why do we have to assume that the jury would not have applied the same definition to question one as to question five? Am I getting the questions right? Yes, I understand. I mean, it's an assumption either way. I think it's not hard to – Well, you're talking about plain error here. Right. It's not as if somebody stood up and objected. Right. Well, I mean, I think what we have here is we see the jury is confused. We see they don't understand what's going on, what they're supposed to be looking at. And after they came out, they came out relatively quickly after they had gotten this clarification. And it seems very possible they had just glossed over the first one, received this partial clarification, and didn't apply it to the previous question involving the sexual nature instruction. Okay. You're down to your five minutes. Would you like to save it for rebuttal? I'd like to save it for rebuttal. Thank you, Your Honor. Thank you for your argument. We'll hear from the county at this time. Mr. Husky. Good morning, Your Honor. Good morning. There are three issues in this case, and I'd like to address them in order of importance to the County of Placer. And the most important one is, of course, the hostile work environment claim, which was submitted to the jury, and we had the verdict on the jury – the jury verdict. By focusing on jury instruction number 10 and questions 1 and 5 of the hostile work environment verdict, plaintiffs are basically trying to make the legal case that the correction by Judge Shubb was too little, too late. I think by focusing on the entire picture, all the instructions, which include the I think the instructions are clearly wrong. And then the issue is, as you put it, whether or not the clarification was enough so that the jury understood that the instructions that they had been given were, in fact, inadequate and they had other basis, right? Well, and Judge – I mean, I think Judge Shubb did a pretty good job in this sense, but I'm not sure he got all the way there. That's the problem. Well, what I – first, I think he did get all the way there because he correctly defined what it meant. This case was about whether or not the hostile conduct was gender-related, and he specifically told them that was what he needed to – that that was what the jury needed to find in response to their question. And certainly, I don't see how there could be any ambiguity as to question number five of the hostile work environment verdict, because that was the question, the specific question that the jury asked. And he told them they had to find that the conduct of the co-employees was gender-related. I think that's clear. Even assuming there could still be some ambiguity because, perhaps, better clarification would have occurred had he gone back and said, well, and this same definition specifically applies to jury instruction number 10 and specifically applies to question number one of the verdict form. Worst case, there's possible ambiguity. I don't think that comes close to meeting the plain error standard. I mean, this is – I don't think there is ambiguity. I think he – what could be unclear about saying of a sexual nature means gender-related, but assuming their argument has some merit that he could have gone further, there was no objection. And I think to – Well, it's a plain error. Right. And let me sort of articulate it this way. Assuming there could be some error, it's not plain. It's – and there would need to be an objection to preserve it. And in this case, there was – on three occasions there was no objection, the jury instruction, the verdict form, and the correction. Having tried the case, it was very clear the evidence and the arguments were all about was this conduct gender-related. Right. But there were – I mean, absent the clarification, the instructions would not relate to what the case was really about at all. Which gets me back to my initial theme, better late than never. No, I'm not. I mean, I think that's the issue in the case. Yeah. And I think that the judge – the jury was confused. They asked the question. The judge correctly clarified it. And I think this would be a tremendous expansion of the plain error doctrine if this were found to be plain error, because at worst you have maybe some ambiguity. Let's assume that it was plain error. Part of the test is whether substantial rights are affected. And I gather if we were to conclude that it's plain error, it had to affect her rights. Correct? Well, the – In other words, if the jury was really confused about this point, if the point wasn't It could affect the verdict. But I understand the substantial rights affected to mean was there a miscarriage of justice. Well, you have to – if the verdict would have been different, then you have to assume that it – Well, I'm not sure the verdict would have been different, because I – I thought that's what you said. In cases where, for example, this is not a case where she clearly would have won had the instruction been given. The evidence was solidly in her favor that there was hostile conduct based on her gender. But for the jury instruction, she would have won. That confused them. Here, the county had a very strong case that gender had nothing to do with it. She had worked for 10 years prior with no problem with her co-employees. And it was when she started making book on her fellow employees when she didn't get promoted, it was the conduct that she engaged in, not her gender, that caused whatever hostility there was. I think the county had a very strong case in that regard. Therefore, I don't think this would be a miscarriage of justice, even if the instruction were found to be in plain error. The first question related to the liability of supervisors. And the second question, which the judge answered, the second interrogatory, number five, related to non-supervising workers. And is it a reasonable assumption that the jury really wasn't, to the extent that there was a hostile work environment here, it was really created by co-employees and not supervisors? Well, in fairness, the record did contain some of both, some allegations of both. But I agree, primarily her complaint was against Mike Eastman, who was a co-employee, and being shunned by other co-employees. There were some direct allegations against supervisors, Jacinto and Kirkman. In particular, the Kirkman chair push or kick that contact her ankle. But certainly the bulk of the case was the conduct of Eastman and her co-employees. And they clearly found that that conduct was not gender-related. This actually, that point caused me to sort of move into the Stever kick, because I think that finding is very important as to the Stever kick as well. Stever was a co-employee. He didn't work in the same crew that she did. He was a mechanic in the garage, and she worked on the sign crew. So he wasn't part of this allegedly hostile milieu. In fact, he knew Planoff and her husband socially from their contact regarding motorcycles. She goes and visits the garage. She's doing something to the wrench, and he kicks her in the derriere to teach her not to handle the wrench in that fashion. The response to question number five is, I think, very important to the case against Stever, because the jury found that no physical contact by co-employees was gender-related. Therefore, even if there had been some, if the judge shouldn't have granted the motion for summary judgment, that issue was tried. That issue went to the jury, all the evidence, and the jury found that it was not gender-related, which is the exception that Planoff has argued that would bring it out of workers' compensation exclusivity. Well, absent Judge Shub's explanation, there was a real possibility, maybe even a probability, that the jury, during deliberations, would have thought that there had to be some sexual overtone to the relations between these parties. Correct? With the benefit of 20-20 hindsight, I would agree that there was ambiguity in that instruction, had it not been clarified before it went to the jury. So the question that we have is, how far down did the judge's explanation reduce that possibility? Let me try to answer that two ways. First, even without the correction, I think we'd be arguing whether or not it was reversible error, not plain error. It was, with the benefit of 20-20 hindsight, I think it should have been instructed it was gender-related. You know that's what we do here. Yes. 20-20 hindsight is our stock and trade. But plain error has to be obvious, and obvious at the time. And as opposed to reversible error, plain error has to be something that is plain. And the two counsel and the experienced trial judge who were trying this case didn't see it. Yeah. But if we accept that explanation, then there would never ever be any plain error. You're just defining the problem. All right. The question is, assuming it got the – I'm sorry. No, no. I'm sorry. Assuming it got – that could have been plain error, it was corrected. And there's been no case cited to this Court that I have read that indicates that when you have what may have been plain error and then it's corrected and they concede the correction, at least in their opening brief they conceded the correction was correct, that that could still be plain error. You know, as I think worst case, there could be some possible theoretical confusion. But that's – that doesn't suffice for plain error when there's been no objection. I think we've got your argument well in hand. All right. Do you have anything more for us that's different? I would only say with regard to the Kirkman push of the chair, I think they're asking for an expansion of California law under Section 3602 to make any supervisor's conduct the act of the employer. Well, actually, I have a question about that. And it may be that California works differently from the way other states have. But generally speaking, on the exclusivity bar, it's a bar to the suit, period, the claim. Right? Yes. So that's just step one. If you – step two is allowing the claim, is there a defense? And the defense would be supervisor liability or whether or not the action, either with agency or respond to its superior or whatever, would be successful. Do you see what I'm saying? And it's looked to me as though everyone's conflated the two to say, well, no, this – I mean, maybe I'm mistaken on that. But I don't see how supervisor liability really plays into the exclusivity doctrine itself. That's an interesting point, Your Honor. I don't know that I consider it from that point of view. Let me put it this way. In my home state, it would be plain that if a coworker hit another coworker, you could sue the employer and the exclusivity bar would not apply. Now, California may be a little bit different, but that seems to me what happens here. Well, the – I think by statute, it is different. Section 3602, I believe, has to be the act of the employer. No, it's the same statute. I looked it up. I mean, it's – but California may be a little different on that. But the theory – I mean, the theory underlying Montana is, look, the bar is to the claim. A defense may be that there's a supervisory role or not. You may have a different defense. But they could – but the bar itself doesn't preclude the worker from bringing the claim. I may not be making myself clear on that. I think I understand what you're saying. You may still – I guess what I'm saying is your defense may still be good in California on the supervisory aspect of it, but I'm not sure exclusivity itself stops the plaintiff before the plaintiff – I mean, at the starting gate of the suit. Well, here, in fact, we do have a factual record as to what the conduct was and what happened. And I think – and it's relatively undisputed. I mean, I think the – Kirkman reacted in anger to her comment behind his back that he can't do his effing dailies and spontaneously came out, yelled, kicked a chair. I don't think that – you know, the record shows that the – the facts show that that was not the conduct of the employer. That was a personal reaction. Right, but isn't that an ultimate defense as opposed to – I mean, the – You know, it's a – I mean, I've seen that raised before. Well, I think it is a bar to bringing the claim, but – Yeah, so, I mean, then the secondary question, well, I – Well, you could still win. It's just a question of how you – you know, whether it's a defense or whether it's part of the main case, you could still win on the ground that the defense is clear, that it doesn't apply to supervising. I think the strange thing here is the most difficult legal issue involves what is basically a trivial act of contact with her ankle, transient pain, no attorney's fees, no punitive damages. But I still think it was – So go settle that one. All right. I have no – nothing further to add. Thank you. Rebuttal? Counsel? Your Honor, just a few things. To get back to the plain error review argument, I mean, it's clear under the new rules that plain error review stands for something. It means – it at least means something, that some type of review should be done. And here, the error was very obvious and it was plain. The jury instructions relied on old case law. And we know the jury was confused. And we don't know what the jury would have found had they had the correct instructions. Ms. Dorfler-Kasner put on her case of gender harassment theory. The jury instruction didn't respond to that case. It talked about something else. And the clarification was not clear enough and was not correct. Well, at least that's the question five, which dealt with the co-employees. It was a correct answer. And so you wouldn't be entitled to – even if we would agree with you, it would go back only as to the supervisory employees. Well, I don't think the question – Okay. He answered the question, the second interrogatory, quite clearly. I don't think there was any basis to conclude that the jury would have been confused about that. Well, I think – Your argument is that, well, he didn't say it also applies to question one. So question one dealt with a separate issue of supervisory liability. And so you agree that even if we were to agree with you on plain error, we would still accept the answer to question interrogatory five and decide that against you. I don't completely agree with that, Your Honor. Tell me why I'm asking. Right. Well, because if the instruction – if the clarification had just said you need to look at gender-based harassment, I would agree with you. But – and I think that's the correct standard. I think we can all agree with that. But I think the problem here is that the judge instructed conduct of a sexual nature is gender-related harassment. He equated the two. And while I think that gender-related harassment part is correct, I think the first part was incorrect, equating the two. Why is that incorrect? I mean, he's basically saying – he's trying to expand the circle of claims to include gender-related claims, which were argued. So. Well, yes, Your Honor. But I think if he did it the other way around, if he said conduct of a sexual nature includes gender-based harassment that is, you know, not sexual in nature, I think that would be the true – that would be correct. But I think the way he did it kind of minimized her – what she was trying to prove at trial. If I could just address one other argument about Section 3602 in terms of what Your Honor was saying about ratification. There isn't ratification required under 3602 because the employer is the agent. And in this instance, the employer was Supervisor Kirkman. That's the plain – just the plain language of Section 3602. And counsel, I think, was – is arguing that it was totally personal in nature and this somehow gets us outside of this exception. And I haven't seen any case law that states that. And I think it's kind of irrelevant, but – and beside the point. But this was also a work-related dispute. It was about whether he could perform his job function and her criticisms of him. If you have any more questions. I don't see any. Thank you for coming in today. Thank you, Your Honor. Very interesting case, well argued, and it is now submitted for decision.
judges: Korman, Hawkins, Thomas